NOT FOR PUBLICATION                                                          (Doc. No. 13)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Joseph SPONHEIMER, | : |
| Plaintiff, | : Civil No. 15–4180 (RBK) |
| | : **OPINION** |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Joseph Sponheimer ("Plaintiff") for review of the final determination of the Acting Commissioner of Social Security ("Commissioner"). The Commissioner denied his application for Social Security Disability Insurance ("SSDI") benefits under Sections 216(i) and 223(d) of Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

Plaintiff applied for SSDI benefits on May 18, 2011, claiming inability to function and/or work as of October 20, 2009 due to lumbar radiculopathy and torn meniscus requiring knee replacement. Administrative Record ("Rec.") at 91. At the time of filing, Plaintiff was forty-six years old. *Id*. His claim was denied after initial review on January 13, 2012, and upon reconsideration on November 28, 2012. *Id.* at 26. Administrative Law Judge Nicholas Cerulli ("ALJ") held a hearing at Plaintiff's request on November 13, 2013 and issued a written decision

denying Plaintiff's claim on March 10, 2014. *Id.* at 23. Plaintiff then requested review of the ALJ's decision by the Appeals Council. *Id.* at 1–4. The Appeals Council denied Plaintiff's request for review on June 10, 2015, concluding that additional treatment notes submitted by Plaintiff did not provide a basis for changing the ALJ's decision. *Id.* at 2. Plaintiff then filed a Complaint in this Court on June 19, 2015 (Doc. No. 1).

### A. Mr. Sponheimer's Alleged Impairments

For background purposes, a brief medical history of Plaintiff's ailments follows. Plaintiff sustained injuries upon falling from a roof while at work on October 30, 2009, which aggravated pre-existing conditions. Rec. at 454. Shortly after the injury occurred, Joan F. O'Shea, M.D. of the Spine Institute of Southern New Jersey found that x-rays and an MRI indicated Grade II spondylolisthesis at L4-5, degenerative disc disease at every level except for L3-4, and an old L4-5 Grade I spondylolisthesis with bone spurs. *Id.* at 400, 404.

Dr. O'Shea referred Plaintiff to Adam Sackstein, M.D. of the Pain Management Center at Voorhees for his reported low back pain radiating to the right lower extremity. *Id.* at 378. Dr. Sackstein concluded that Plaintiff was suffering from lumbar radiculopathy and administered a series of lumbar epidural steroid injections throughout the first half of 2010. *Id.* at 371, 375, 377, 389. Following the injections, Dr. Sackstein noted on June 29, 2010 that Plaintiff's lumbar radiculopathy was controlled. *Id.* at 370.

On May 13, 2010, Plaintiff was seen by John Mariani, D.O. of Academy Orthopedic Associates for pain in his right knee. *Id.* at 324. Upon evaluation, Dr. Mariani identified rather severe medial joint line tenderness, mild lateral tenderness, very mild effusion, crepitus on motion with range from 5 to 110 degrees, and no evidence of knee instability. *Id.* at 324. Dr. Mariani noted that Plaintiff appeared able to perform work that was sedentary or involved

limited standing and walking, but may not be able to perform activities such as climbing, squatting, heavy lifting, or similar actions. *Id.* at 325.

On August 6, 2010, Plaintiff returned to Dr. O'Shea. Dr. O'Shea documented 5/5 motor strength in bilateral upper and lower extremities, normal sensation, normal reflexes, normal range of motion in hips and knees, and normal toe and heel walking. *Id.* at 395. Dr. O'Shea indicated that Plaintiff could now perform light duty work with no lifting greater than 20 pounds. *Id.* at 396. During a subsequent visit on November 2, 2010, Dr. O'Shea made similar findings and additionally stated Plaintiff was now limited to lifting no greater than 50 pounds. *Id.* at 391–94.

On November 15, 2010, David Weiss, D.O. performed an independent medical evaluation of Plaintiff at the request of Plaintiff's attorney. *Id.* at 406–13. Dr. Weiss indicated that Plaintiff ambulated with a noticeable right lower extremity limp and had boggyness in the left and right knees. *Id.* at 411. Dr. Weiss determined Plaintiff was a candidate for a right total knee arthroplasty. *Id.* at 412.

On August 12, 2011, Plaintiff underwent back surgery performed by Dr. Testaiuti. *Id.* at 517–20. Between September 2011 and April 2012, Plaintiff returned to Dr. Testaiuti for regular follow-up visits. Throughout this period, Dr. Testaiuti noted Plaintiff continued to experience mechanical low back pain in the mid lumbar region and tolerable numbness in his left foot. *Id.* at 755–33. At the end of that period, Dr. Testaiuti concluded that Plaintiff could perform sedentary or light duty work, but his right knee precluded him from climbing ladders, bending, and stooping. *Id.* at 755. On July 18, 2013, almost two years after the surgery, Plaintiff reported continued, significant improvement since the surgery. *Id.* at 1130.

On November 14, 2012, Plaintiff underwent a right total knee arthroplasty. *Id.* at 875. Dr. Mariani performed the surgery to treat Plaintiff's degenerative joint disease. *Id.* On February 14, 2013, Plaintiff returned to Dr. Mariani for a follow-up visit and showed marked improvement in right knee pain and functional abilities but reported some difficulty with numbness in his knee, medial ankle, and foot. *Id.* at 1090. Plaintiff was seen by Dr. Mariani again on March 14, 2013, and Dr. Mariani documented no knee instability, knee range of motion from 0 to 120 degrees, no motor deficits, excellent quadriceps and hamstrings function, no popliteal tenderness, no calf tenderness, and no pain on passive dorsiflexion of the foot. *Id.* at 1087. Additionally, he noted mild sensory neuropathy interpreted at the peroneal nerve but identified no evidence of lumbosacral radiculopathy or other neuropathy. *Id.* Dr. Mariani ultimately assessed that Plaintiff was limited to sedentary work with limited standing and walking, and was not able to kneel on the right knee or perform heavy work such as squatting, lifting, or climbing. *Id.* at 1087–88.

### B.     The ALJ's Decision

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step evaluation process to determine if an individual is disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1520(a)(4)(i) (explaining the first step); *id.* § 404.1572 (defining "substantial gainful activity"). Second, the claimant must demonstrate that he had a "severe

medically determinable physical or mental impairment" that lasted for a continuous period of at least twelve months. *Id.* § 404.1520(a)(4)(ii) (explaining the second step); *id.* § 404.1509 (setting forth the duration requirement). Third, if the claimant shows that his condition meets or equals one of the impairments listed by the Commissioner, he is found to be disabled; otherwise, the analysis proceeds to step four. *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P., app. 1 (listing impairments). Fourth, if the condition does not meet or equal a listed impairment, the claimant must show that he cannot perform his past work and the ALJ must assess the claimant's residual functional capacity ("RFC").[1] *Id.* § 404.1520(a)(4)(iv).

If the claimant meets his burden, the burden shifts to the Commissioner for the fifth and last step. *Zirnsak*, 777 F.3d at 612. At the last step, the Commissioner must establish the existence of other available work that the claimant is capable of performing based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *Id.*

In the present case, the ALJ first concluded that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 30, 2009 through his date last insured of December 31, 2013. Rec. at 28. Next, the ALJ found that through the date last insured Plaintiff had severe impairments, namely degenerative disc disease, degenerative joint disease, obesity, status post lumbar fusion, status post right total knee arthroplasty, and panic disorder, but he did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. *Id*. at 28–30. Based on a review of the record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in

---

[1] A claimant's RFC is used to determine if the claimant can return to his past work, but also to measure "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

5

20 C.F.R. § 404.1567(a) except he can perform occasional pushing and pulling with the lower extremities, climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; Plaintiff can never climb ropes, ladders, or scaffolds and should avoid concentrated exposure to hazards such as unprotected heights and moving machinery; and Plaintiff is limited to performing unskilled work involving routine and repetitive tasks with occasional changes in the work setting; and occasional interaction with coworkers, supervisors, and the public. *Id.* at 30. Lastly, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 35–36. Therefore, the ALJ decided that Plaintiff was not disabled under the Social Security Act's definition of disability. *Id.* at 36.

## II. Standard of Review

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision is supported by substantial evidence. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The evidence must be "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). If the Commissioner's decision is supported by substantial evidence, the court may not set it aside, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F. 2d 110, 114 (3d Cir. 1983).

The court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. Discussion

The ALJ decided Plaintiff was not disabled and therefore not entitled to SSDI benefits at any point during the relevant time period. This Court finds that substantial evidence supports the Commissioner's determination. Accordingly, the Commissioner's decision is affirmed.

### A. Analysis of Medical Evidence of Record

Plaintiff alleges that the ALJ failed to analyze the entire evidence of record and sufficiently explain the bases for his conclusions, in particular regarding the opinions of Plaintiff's treating source providers. Pl.'s Br. at 9–14. The treating physicians, Drs. Mariani and Testaiuti, opined at various points that Plaintiff is unable to climb ladders; unable to bend or stoop; restricted to lifting between 10 and 30 pounds; unable to crawl, bend, twist, or kneel; and limited in the ability to stand and walk. *Id.* at 12–13.

The determination of a claimant's disability is reserved for the ALJ. 20 C.F.R. § 404.1527(d)(1). The ALJ is responsible for "evaluat[ing] all relevant evidence and to explain the basis for his or her conclusions." *Fargnoli*, 247 F.3d at 42. If evidence is rejected, "an

explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Where the record is voluminous, the ALJ is not required to reference every relevant treatment note. *Fargnoli*, 247 F.3d at 42.

The Court finds that the ALJ evaluated all relevant evidence and adequately explained the bases for his conclusions. The decision contained a thorough review of the medical evidence of record. Rec. at 32–33. It surveyed numerous clinical findings, which noted that Plaintiff had 5/5 motor strength in his lower extremities, normal gait, no right leg instability, no evidence of knee instability, intact sensation and reflexes, normal toe and heel walking, and excellent right knee range of motion. *Id.* The ALJ also reviewed Plaintiff's activities of daily living, which included completing home exercises, walking the dog, making the bed, attending his son's baseball games and practices, fishing once a week for four hours, and playing Bocce ball three times a month. *Id.* at 32. Records provided by Drs. Mariani and Testaiuti are specifically referenced at several parts of the decision. The ALJ noted that Dr. Testaiuti's treatment records following Plaintiff's back surgery concluded that Plaintiff "appeared to do quite well" and only "minimal mechanical low back pain" remained. *Id.* Similarly, the ALJ mentioned that Dr. Mariani found Plaintiff to be "doing quite well with no right knee pain, no motor deficits, and merely a mild sensory neuropathy" after the right knee replacement. *Id.* It appears that the ALJ conducted a thorough review of the medical evidence of record and adequately analyzed all relevant evidence.

Where the ALJ accorded little weight to the opinions of medical source providers, he provided the reasoning for his decisions. In reviewing the opinions of Drs. Mariani, Demetriades, and O'Shea, the ALJ explicated that he assigned little weight to some portions because they were not supported by the record. *Id.* at 34. Such an explanation is sufficient. Although the Court recognizes the decision could have proffered a lengthier discussion for why it rejected each of the medical opinions, for example Dr. Testaiuti's, such detail was not required. The ALJ provided an extensive account of medical evidence that conflicted with portions of Dr. Testaiuti's opinion and was not obligated to address every treatment record particularly considering record's volume. Accordingly, the Court finds there is substantial evidence to support the ALJ's evaluation of the medical evidence of record.

### B.    Evaluation of Opinions of Treating Source Providers

Plaintiff alleges the RFC determination was not supported by substantial evidence because the ALJ should have accorded greater weight, if not controlling weight, to the opinions of Plaintiff's treating physicians. Pl.'s Br. at 14–18. The ALJ is responsible for assigning weight to the medical opinions of record. *See* 20 C.F.R. § 404.1527. In general, opinions from treating sources receive more weight because they are most likely to be able to provide a "detailed, longitudinal picture of [a claimant's] medical impairment(s)" and "unique perspective to the medical evidence." *Id.* § 404.1527(c)(2). If an opinion from a treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, the opinion is accorded controlling weight. *Id.* If not, the ALJ determines how much weight to assign the opinion based on the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, level of evidentiary support, consistency with the record, specialization of the

physician, and other factors. *See id.* § 404.1527(c). Furthermore, the ALJ can reject a treating physician's opinion if its findings are inconsistent with other medical evidence in the record. *See Plummer*, 186 F.3d at 429; 20 C.F.R. § 404.1527(c).

Here, the ALJ states that he accorded "some weight" to Dr. Mariani's opinion that the Plaintiff was able to perform sedentary work with limited standing, limited walking, no climbing, and no heavy lifting, but "little weight" to the doctor's opinion of no squatting and complete inability to work because it was not supported by the record. Rec. at 34. The ALJ accorded "some weight" to Dr. Testaiuti's opinion that Plaintiff could perform sedentary to light work "to the extent that it is consistent with the claimant's assigned residual functional capacity." *Id.*

There is substantial evidence to support the ALJ's evaluation of the treating source opinions and RFC assessment. The ALJ decided to give little weight to Dr. Mariani's opinion of no squatting and complete inability to work because, as the ALJ noted, other medical records contradicted these conclusions. Multiple clinical finding stated that Plaintiff had 5/5 motor strength in his lower extremities, no knee instability, normal knee range of motion, and normal reflexes. *Id.* at 32–33. Dr. Mariani himself, in treatment notes, observed that Plaintiff was "doing quite well" following a total right knee replacement and had no right knee pain, no motor deficits, and marked improvement in his functional abilities. *Id.* at 33. In regards to Dr. Testaiuti's opinion, the ALJ assigned "some weight" only to the determination that Plaintiff could perform sedentary to light work and not to his other remarks that Plaintiff is unable to climb ladders, bend, or stoop; his lifting is restricted to between 10 and 30 pounds; and he is not to crawl, bend, twist, or keel. *See, e.g.*, *id.* at 755, 757, 761. However, the restrictions alleged by Dr. Testaiuti are contradicted by clinical findings that Plaintiff had full motor strength in his legs, normal knee stability and range of motion, and intact sensation and reflexes. *Id.* at 32–33. Dr.

Testaiuti himself wrote that, following back surgery, Plaintiff "appeared to do quite well" and experienced minimal low back pain, negative straight leg raise, and 5/5 motor strength. *Id.* at 33. Thus, the record shows that there was substantial evidence that failed to consist with parts of the treating providers' opinions. Where a treating physician's opinion does not have controlling weight, the ALJ is charged with assigning weight based on several factors, which include the opinion's level of evidentiary support and consistency with the overall record. 20 C.F.R. § 404.1527(c). Given that the decision identified conflicts between the treating providers' opinions and other medical evidence, the Court finds that the ALJ properly weighed the treatment sources' opinions.

Moreover, Plaintiff has not shown that the ALJ's decision would be different if he had accorded greater weight to the opinions of Plaintiff's treating physicians. Where an error by an ALJ is harmless, the court will not grant remand. *Rutherford*, 399 F.3d at 553. Here, the vocational expert testified that Plaintiff would have been able to perform unskilled sedentary jobs, such as final assembler of optical goods, addressing clerk, and rating clerk, which exist in significant numbers in the national economy. Rec. at 36. The Commissioner has ruled that ability to perform unskilled sedentary work is usually not considered eroded by limitations or restrictions related to balancing, kneeling, crouching, or crawling. SSR 96-9p. Stooping is not an activity required by the jobs mentioned by the vocational expert, final assembler, addresser, and rating clerk. U.S. Dept. of Labor, Dictionary of Occupational Titles 713.687-018 (4th ed. 1991), 1991 WL 679271 (final assembler); *id.* 209.587-010, 1991 WL 671797 (addresser); *id.* 214.587-010, 1991 WL 671894 (rating clerk). Even if the ALJ did err in assigning little weight to the limitations and restrictions mentioned by the treating providers, such error would be harmless and would not serve as a basis for remand.

11

### C. Function-By-Function Assessment of Limitations and Restrictions

Plaintiff also argues that the ALJ failed to perform a function-by-function assessment of Plaintiff's limitations and restrictions. Pl.'s Br. at 16–18. Social Security Ruling 96-9p requires that a RFC assessment "include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." The Third Circuit has found a function-by-function assessment to be adequate where the ALJ evaluated specific activities or reviewed all relevant evidence in the record. *See Garrett v. Commissioner of Social Sec.*, 274 Fed. Appx. 159, 163 (3d Cir. 2008); *Tuohy v. Commissioner of Social Sec.*, 127 Fed. Appx. 62, 66 (3d. Cir. 2005). In this dispute, the ALJ determined that Plaintiff had the RFC to perform sedentary work; could occasionally push and pull with the lower extremities, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ropes, ladders, or scaffolds. Rec. at 34. The ALJ reached that determination after reviewing Plaintiff's testimony, activities of daily living, medical records, and opinions from medical sources. *Id.* at 31–34. The ALJ's RFC assessment also references specific work-related functions. Thus, the function-by-function assessment fully complies with SSR 96-9p.

### D. Evaluation of Plaintiff's Testimony

Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's testimony regarding his symptoms. Pl.'s Br. at 18–20. Plaintiff further contends that this Court should remand the matter for further proceedings in light of SSR 16-3p, *see id.*, which supersedes SSR 96-7p and alters that standard by which ALJs are to evaluate symptoms. SSR 16-3p became effective on March 16, 2016, after the ALJ rendered decision in this case on March 10, 2014. Thus, the ALJ

was not bound by SSR 16-3p but by the previous SSR 96-7p.[2] SSR 96-7p requires that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record." A conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible" does not suffice. SSR 96-7p. In determining credibility, the ALJ must examine the entire case record, including objective medical evidence, the individual's statements, information provided by physicians, and other relevant evidence in the record. *Id.*

Here, the ALJ did not adopt all of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms because Plaintiff testified to impairments and limitations not fully supported by the record. Rec. at 32. Plaintiff stated that he experiences stabbing pain in his back, numbness in the right knee, inability to lift heavy objects, inability to squat, difficulty sitting and standing for long periods of time, and problems sleeping. *Id.* at 31. However, as noted by the ALJ, Plaintiff's activities of daily living included doing ninety percent of the cooking, completing the majority of the grocery shopping, playing on a bocce team, getting into a hot tub, and walking his dog. *Id.* at 32. Furthermore, the medical evidence showed that Plaintiff exhibited full motor strength, stability, normal reflexes, and normal range of motion in his lower extremities, and marked improvement following back and knee surgeries. *Id.* The ALJ's decision discussed the particulars of Plaintiff's testimony, assessed it in light of the case record, and explained that Plaintiffs' statements failed to fully cohere. Therefore, the Court is

---

[2] Even if the ALJ was bound by SSR 16-3p, this Court's analysis of Plaintiff's subjective symptoms remains the same. SSR 16-3p states that an ALJ must evaluate a claimant's symptoms based on all evidence in the record and not claimant's character. In this dispute, the ALJ partially discounted Plaintiff's testimony because portions conflicted with the record, not because of Plaintiff's character. Rec. at 32. The ALJ's decision thus comports with the new standard promulgated in SSR 16-3p.

satisfied that the ALJ's evaluation of Plaintiff's statements regarding his symptoms is supported by substantial evidence.

### E. Error by Appeals Council

Plaintiff additionally alleges the Appeals Council erroneously failed to remand to consider additional documents Plaintiff submitted on August 13, 2014. Pl.'s Br. at 8–9. Plaintiff represents those documents to be treatment records by Drs. Paul and Testaiuti from April 15, 2014 through August 7, 2014. Rec. at 267–68. The pertinent period for assessing Plaintiff's alleged disability is October 30, 2009 through Plaintiff's date last insured of December 31, 2013. *Id.* at 28. The additional records postdate Plaintiff's last insured date by more than six months. Although Plaintiff alleges that "the underlying medical conditions giving rise to the doctors' present recommendations are the same as those arising out of [Plaintiff's] disability onset date," Plaintiff pleads no specific evidence that the records speak to Plaintiff's disability during the relevant time period. *Id.* at 268. The Court is not persuaded of the Appeals Council's alleged error.

## V. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

Dated:   09/08/2016                                s/ Robert B. Kugler

                                                                                       ROBERT B. KUGLER

                                                                                       United State District Judge